STAHL, Circuit Judge,
concurring in part and dissenting in part.
Although I agree with the majority that this appeal is properly before us, see ante Part II, and that Seven Provinces should have provided Commercial Union with reinsurance coverage, see ante Part III, I believe that the district court erred in finding that Seven Provinces’ conduct warranted liability under 93A. Thus, with respect to Part IV of the majority opinion, I respectfully dissent.
Massachusetts courts have held, without fail, that Chapter 93A does not apply to a mere breach of contract. See Ahern v. Scholz, 85 F.3d 774, 798 (1st Cir.1996) (citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir.1985)). In the context of insurance, while a carrier may not stubbornly refuse to pay a claim once liability has become “reasonably clear,” it can continue to deny coverage based upon a “plausible interpretation” of a policy without violating 93A. Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 56 & n. 23 (1st Cir.1999). The assertion of a reasonable defense to coverage does not constitute an unfair settlement practice even if the basis for that defense turns out to be wrong. See Premier Ins. Co. v. Furtado, 428 Mass. 507, 703 N.E.2d 208, 210 (1998).
With these considerations in mind, let us examine the facts as the district court found them. The court predicated the imposition of 93A liability on Seven Provinces’ purported pattern of delay in handling Commercial Union’s claim for coverage. The court observed, for example, that upon receiving an initial demand for coverage in August, 1993, a “pattern quickly developed by which [Commercial Union] would seek payment ... and Seven Provinces would respond only after some delay, and then by requesting further information.” Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 9 F.Supp.2d 49, 60 (D.Mass.1998). But then, after criticizing Seven Provinces’ conduct since August, 1993, the district court concluded that 93A liability was unwarranted until after August, 1995. This inconsistency — between the period of time for which the court assailed the company’s conduct, see id. at 65 (“Seven Provinces has delayed payment for over four years after receiving the bill, and over two years since locating the [facultative reinsurance certificate].” (emphasis added)), and the period of time for which the court actually found a 93A violation to have occurred — requires us to scrutinize the 93A ruling.
Between August, 1993 and August, 1995, Seven Provinces was entitled to question its obligation to provide reinsurance coverage because the very existence of a reinsurance relationship was unclear. As the district court acknowledged, Seven Provinces had “legitimate reasons” to doubt whether a reinsurance relationship actually existed at all. Id. at 70. By the time the facultative reinsurance certificate was found, litigation already was underway and Seven Provinces was entitled to raise any reasonable defenses to coverage that emerged from the terms of the policy. Among these defenses, Seven Provinces argued (1) that Commercial Union’s allocation of liability among its Teledyne policies inflated the amount of loss that this particular reinsurance agreement covered, and (2) that Commercial Union’s use of quota share treaty reinsurance violated the net retention requirement in the facultative reinsurance certificate. The district court conceded that these defenses were, respectively, “possible,” see id. at 59, and “plausible,” see id. at 56.
*45 While it is true that Seven Provinces’ attorney asked about another defense to coverage for the first time at trial, he did so only in the form of a single question about an “owned property” exclusion in one of the insurance policies. This question did not delay the proceedings because the court curtailed the inquiry. When the issue briefly resurfaced later on in the trial, Commercial Union did not object and the court did not intervene. There may be litigation strategies that are so abusive as to warrant 93A liability, but there is no authority for grounding 93A liability on an attorney’s decision “to test the waters” briefly when a new issue emerges during the six-day trial of a complicated case.
In any event, Seven Provinces’ insurance expert, Austin Thornton, was prepared to testify and in fact did testify in support of the company’s defenses to coverage. Armed with that expert advice, the company proceeded on the reasonable belief that its liability genuinely was unclear. See Ferrara & DiMercurio, Inc., 169 F.3d at 56 (“Insurers are both encouraged and entitled to rely ... on the advice of expert consultants in evaluating liability [on a demand for coverage].”); see also Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 448 N.E.2d 357, 361-62 (1983). Although these defenses to coverage may have taken time to litigate, and although none of these defenses ultimately prevailed, the record simply does not suggest that Seven Provinces acted with the kind of culpability that 93A requires. See Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir.1996).
The majority takes a different view, suggesting that as soon as the facultative reinsurance certificate was found, Seven Provinces should have paid Commercial Union’s claim in full rather than continuing to raise new issues and questions. In particular, the majority contends that it was norma-tively unfair for Seven Provinces to demand additional documentation and to ask for further explanations once the existence of a reinsurance relationship was established. But if anything, the discovery of the facultative reinsurance certificate reasonably justified some delay on Seven Provinces’ part because once the certifí-cate was found, the company was entitled to pause in order to determine whether any other defenses to coverage appeared from the language of the certificate or from the factual circumstances surrounding the claim.
The majority cites no authority — and I know of none — to support the proposition that a reinsurer must provide coverage in full, without delay, and without limitation, simply because some kind of policy has been found. If that were the law, an insurer could face 93A liability whenever it assumed coverage pursuant to a “reservation of rights” letter rather than waiving its defenses from the onset. But that is not the law. Although the reinsurance industry holds itself to high standards of conduct that weigh in favor of coverage under the policy in a doubtful case, those standards do not justify liability under 9SA simply because a reinsurer pauses to uncover and to raise a variety of “plausible” and “possible” defenses to coverage. Moreover, while it is true that Massachusetts courts might permit 93A liability when a plaintiff initiates litigation solely to burden another, see Schubach v. Household Fin. Corp., 375 Mass. 133, 376 N.E.2d 140, 142 (1978) (suggesting that a finance company might violate 93A by suing debtors in distant jurisdictions so that they would be more likely to default), they have stopped short of saying that a defendant risks 93A liability simply because it raises a vigorous defense that fails to succeed on the merits. The district court erred in imposing liability under 93A.
Setting aside the facts of this particular case, what troubles me most about the majority’s approach is that it truly has no bounds. Although the majority opinion says that “[t]here is a line ... that divides run-of-the-mill negotiating tactics from those that border upon the extortionate,” it offers no indication of where the line *46 should be drawn when imposing 93A liability for conduct during litigation. Every commercial litigant appearing in federal court in Massachusetts must now fear that if it raises plausible defenses against a debatable claim rather than agreeing to pay the claim at the outset, it will risk 93A liability simply because it chose to fight and lost. Massachusetts law has never reached that far.
For the foregoing reasons, I respectfully dissent with respect to Part IV of the majority opinion.